## HELFI CO. v. SILVEX CO. et al.

(Circuit Court of Appeals, Third Circuit. February 25, 1922.)

### No. 2786.

Patents ⬅328—1,061,915, for a spark plug, held not to involve invention.

The Johnston patent, No. 1,061,915, for a spark plug designed to produce a larger spark than heretofore obtainable, as limited by an earlier patent, *held* not to involve invention, but to show only such a mechanically progressive step as the constantly improving art would naturally take.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit by the Helfi Company against the Silvex Company, and others. From a decree for defendants (274 Fed. 653), plaintiff appeals. Affirmed.

Wallace R. Lane and George Mankle, both of Chicago, Ill., and Chester N. Farr, Jr., of Philadelphia, Pa., for appellant.

J. Bonsall Taylor and E. Hayward Fairbanks, both of Philadelphia, Pa. (Edward H. Schwab, of Bethlehem, Pa., of counsel), for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. This case involves construction of the claims of a patent for a spark plug, alleged infringement thereof,

and asserted unfair business competition in the sale thereof. Turning first to the patent phase thereof, we note that on February 4, 1911, Charles F. Johnston applied for, and on May 13, 1913, was granted, patent No. 1,061,915, here in suit, for a spark plug.

As will be seen from the statements in his specification, the object he had in view was to obtain a larger spark than had hitherto been possible, and the functional means to do so was the extension in parallel lines of the spark-emitting portion of the electrode, in a form that had not been theretofore used; and in such novelty of object and originality of means his disclosure was alleged to involve invention. These disclosures of object and means he thus stated in his specification:

"One of the objects of this invention is to produce an improved spark plug by means of which a considerably *larger* spark may be obtained than has heretofore been possible. * * * The outer end portions *11a* of the electrodes, *11* are bent to be parallel with the central electrode, so that, instead of a spark being formed *at only the points* of each of the electrodes *11*, a large spark is formed. It will be seen that when a current passes through the spark plug it will jump the gaps from the electrode *5* to the *long end portions* of each of the electrodes *11* of opposite polarity, thereby producing a much *larger spark* than has heretofore been obtainable. * * * Inasmuch as a large spark is drawn at a point freely accessible to the incoming charge of fresh gasses, the very best ignition is obtained."

Assuming for present purposes, as we will, the utility and operative value of this spark plug, the better ignition due to its length and zone of location, the minimum of wear upon it, due to the spark emanating from a parallel plane and not from a point, its lessened carbon clogging, the ease with which it can be cleaned, the breaking up of the incoming charge of gas in the cage or basket formed by the number, contour, and location of its electrodes, and its other points of excellence, we still revert to the underlying question whether the device involved invention. This issue the court below found against the patent, and after a study of the art we find no error in its so doing. When the application was made, the Patent Office rejected all the claims, in view of the patent to Bouldt, No. 5,899 of 1907, and other patents. Limiting reference there, we note that in spite of amendments, withdrawals of claims and arguments of counsel, the Office for two years persisted in rejections based on this Bouldt and other patents. And we are unable from the file wrapper to discover any change of view or grounds for change of view on the part of the Office from its steadfastly maintained position of these patents anticipating the application. Nor do we now see any reason why the Office should have abandoned its original position, and given to the applicant the governmental stamp of patentability and the consequent foundation for expensive litigation, which could only end in disappointment to the patentee.

Turning to Bouldt's patent, we note that his object, as was Johnston's, was to produce a large spark, and Bouldt's means, as were Johnston's, were long, parallel surfaces at the end of his electrodes. In relation to his object and his means, Bouldt says:

"This invention has reference to sparking plugs * * * of that kind in which the parts between which the sparks pass present relatively *large surfaces,* in order that the wear on the parts may be diminished in comparison with that occurring in sparking plugs in which the spark proceeds from a

point of *small dimensions.* * * * In the sparking plugs in accordance with this invention * * * the outer electrodes are formed in such a manner as to form bars, rods or the like, which are so disposed that the surfaces opposed to the surface of the central electrodes are *parallel* to this latter and are relatively of *great length.* Thus a relatively *long range* of *sparks* is produced."

Bouldt also shows, not only the parallelism of his electrode ends, but the possible multiplication of their number (and thus Johnston's use of four electrodes was thus foreshadowed), in that regard saying:

"The electrodes *1, 2,* * * * are, as already stated, arranged *parallel* to the electrode *3* connected to the central conductor. * * * The electrodes * * * can, of course, be of any desired number, *provided that they present a long surface for the production of sparks.*"

In Bouldt's parallelism and the resultant long spark, he carries into his claim in these words:

"A sparking plug of the kind referred to comprising a cylindrical central electrode and any desired number of electrodes arranged around and with *surfaces parallel* to the surface of said central electrode in such a manner that sparks are formed between the electrodes *over a relatively great length* substantially as described."

Eliminating from Johnston's specifications those elements in his device which Bouldt disclosed in his elongated and parallel surface at the end of his electrodes, and no substantial basis for invention remains in the lengthening of such a long spark electrode, parallel spark plug, and locating it in a zone where the spark would strike under better conditions. In view of the development of the art, it was but such a mechanical progressive step as this constantly improving art would naturally take.

It remains to consider the alleged error on the part of the court below in refusing to sustain the charge of unfair competition. Without discussing the proofs, we limit ourselves to stating we find no error in the court's action. Lest it appear we had overlooked that contention, we note that we do so, not because we have found the patent invalid, but because we find no sufficient grounds of simulation or deception on the part of the defendants to justify our finding that they had palmed off or so deceptively dressed or labeled their spark plugs as to mislead a purchaser who wanted, and thought he was buying, the plaintiff's, into accepting the defendants' spark plug in lieu thereof.

The judgment below is affirmed.